SECOND NAT. BANK OF NEW JERSEY (UNITED STATES v.). See Case No. 16,-248.

---

# Case No. 12,603.

## SECOND NAT. BANK OF ST. LOUIS v. GRAND LODGE OF FREE & ACCEPTED MASONS.[1]

Circuit Court, E. D. Missouri. March Term, 1875.[2]

CORPORATIONS — POWER TO HOLD PROPERTY — LEGISLATIVE RESTRICTIONS.

[A statute incorporating a Masonic association with power to acquire and hold real and personal property to the amount of $50.000 (Act Mo. Feb. 13, 1864, Laws 1863–64, p. 387), contains an implied prohibition against the purchase of property to any greater amount; and an executory contract entered into by such corporation to assume the payment of $200,000 worth of bonds of another corporation in consideration of receiving stock of that corporation to the same amount cannot be made the basis of any liability, even in favor of persons who had purchased such bonds upon the faith of the contract.]

[This was an action by the Second National Bank of St. Louis against the Grand Lodge of the State of Missouri of Free and Accepted Ancient Masons.]

TREAT, District Judge (charging jury). Gentlemen: Under the views which the court entertains concerning the law of this case as

---

[1] [Not previously reported.]
[2] [Affirmed in 98 U. S. 123.]

it will be stated to you, it is not necessary to detain you long. This is an action against the Grand Lodge of the State of Missouri of Free and Accepted Ancient Masons, and is brought against it in its corporate capacity. On the 13th of February, 1864, the legislature of the state of Missouri incorporated the defendant here, the grand lodge, and gave it very few strictly limited and defined powers; and, so far as this action is concerned, the essential power was one "to acquire, hold, possess, use, occupy, and enjoy real and personal estate to the amount of $50,000, and to sell, convey, or otherwise dispose of the same, according to the laws, rules, and regulations of the aforesaid grand lodge, with power to sue and be sued in all courts and places; to have a common seal." The second section contains a provision "that the corporation shall be exempt from the requirements of certain sections in the general act concerning corporations, and shall have power to loan the money of the grand lodge at a legal rate of interest, provided that the power hereby granted shall not be used for banking, insuring, or doing anything not expressly granted by the provisions of this act." Now, so far as this action is concerned, the essential limitation upon its powers is one that restricts the defendant in the purchase of real and personal estate to the amount of $50,000. When that statute was in force, the grand lodge of Missouri, on the 14th of October, 1869, passed this resolution: "Resolved, that this grand lodge assume the payment of the $200,000 bonds issued by the Masonic Hall Association, provided that stock is issued to the grand lodge by the said association to the amount of said assumption of payment of this grand lodge, as the said bonds are paid." On the 12th day of February, 1853 [Laws 1853, p. 263], the legislature of the state of Missouri incorporated a body under the style of the "Masonic Hall Association," with a capital stock of $50,000, to be increased at the will of the stockholders to any amount not exceeding $200,000, and shares of $20 each. This body was made capable of acquiring and holding any and every kind of property whatever, for the purpose of building a Masonic hall in the city of St. Louis, and to sell the same, or otherwise dispose of it; to have the power of making contracts, to sue and be sued, etc. The fifth section provided that "the stock of this association shall be considered personal property, and transferable according to such rules and under such restrictions as the board of directors may by their by-laws direct." The statute having declared that the stock of the Masonic Hall Association was personal property, and the charter incorporating the defendant (the grand lodge) giving it power to purchase real and personal estate to the amount of $50,000, it would follow, in the opinion of the court, that a contract on the part of the grand lodge to purchase property at one time to the extent of $50,000, or to purchase stock to the extent of $50,000, would

be within the lawful powers of the defendant, and could be enforced; but the fundamental idea underlying all corporation law in this country is that corporations have no powers other than those which are conferred by a fair construction of their charters, and that it is the duty of courts to guard against constructive powers and implied powers of those bodies, and to keep their wings clipped to the legal corporate standard fixed by their charter or the law. Now, then, we instruct you that when the legislature of the state of Missouri said to this body, "You may purchase property to the amount of $50,000," that impliedly prohibited the purchase of property to any greater amount, and that the most favorable view that can be taken of the resolution of October 14, 1869, on which this action essentially rests, is that it authorized a purchase of $200,000 of this stock, to be paid for by the assumption of these bonds. This is an entire transaction; that is to say, if this resolution is valid for any purpose, it is valid in its whole extent, and therefore to undertake to authorize the acquisition of property by this defendant to the amount of $200,000 was in direct contravention of its charter. It is not a case where this contract has been executed and the property actually acquired by deed, in which case it might well be that, although it exceeded $50,000, no one but the state, whose franchise had been violated, could take advantage of it. But this action is brought upon this resolution as an executory contract. The stock has not been acquired, and by the terms of this resolution was not to be acquired until the grand lodge (the defendant here) has paid the bonds; so that this action rests essentially upon this resolution as an executory contract,—one to be performed in the future by the defendant; and to allow this action to be maintained would, in the opinion of the court, overthrow the limitation which the legislature put upon this body in respect to the amount of property which it had authorized it to acquire. This was the charter in force when this resolution was passed. On the succeeding 22d day of March, 1870, the legislature passed an act entitled "An act to reconvey to the Grand Lodge of Ancient Free and Accepted Masons in the State of Missouri the college grounds and the property of the Missouri Military Institute at Lexington" [Laws 1870, p. 60]; and that act, after making provision for the conveyance of the property, contains two provisos: "That on the acceptance of the deed to be accepted under section 1 of this act, the state shall not be liable under any former act or contract for the payment of any sum or sums of money to said institution; and provided further, that said grand lodge (which is the corporate body) upon the acceptance of said deed, shall be, and is hereby, authorized to own property of any value not exceeding $300,000." Now, this act would not be binding upon this corporation until it was accept-

ed by them, and it would have to be accepted by the corporate body that next met in the fall of 1870, in October, when a resolution was passed by that body, as I understand it, repealing the resolution of October, 1869, assuming the payment of these bonds in consideration of stock to be received.

Without going into the full statement of our reasons, we instruct you that that act, under any construction we are able to give it, does not have the effect to validate this resolution of assumption; so that, inasmuch as there was no corporate power to pass the resolution of 1869, it cannot form the basis of any liability on the part of the defendant. In order that the whole case, if it shall go beyond this court, may be before the appellate court, we also instruct you in respect to another question in this case. The language of the resolution is: "That this grand lodge assume the payment of the $200,000 bonds issued by the Masonic Hall Association, provided that stock is issued to the grand lodge by the said association to the amount of said assumption of payment by this grand lodge as the said bonds are paid." It seems that on the 1st of June, 1869,—which was the June preceding this resolution,—the Masonic Hall Association issued and negotiated bonds secured by a first mortgage on their property, payable at 15 years, on their hall, for $140,000. Prior, also, to this resolution they had executed $60,000 second-mortgage bonds, payable at five years. These last bonds, at the time this resolution was passed, were in the hands of certain creditors of the Masonic Hall Association as collateral security. Now, we instruct you that under these circumstances this resolution cannot be the foundation of any action on the part of the holders of these bonds, although the present holders may have acquired them after this resolution was passed, and on the strength of it.

Your verdict, therefore, will necessarily be for the defendant.

[The judgment of this court was affirmed by the supreme court, where it was carried on writ of error. 98 U. S. 123.]